**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
ABSOLUTE RESOLUTIONS INVESTMENTS,
LLC,                                                          Case No. 22-cv-2079-MMG
                                    Plaintiff,

            -against-

CITIBANK, N.A.,

                                    Defendant.
-----------------------------------------------------------x

### STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

WHEREAS, counsel for Citibank, N.A. and Absolute Resolutions Investments, LLC (together, the "Parties," and each, a "Party") have met and conferred regarding discovery of paper documents and electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulated Forms and Format for Document Productions ("Protocol") to facilitate the just, speedy, and inexpensive conduct of discovery involving paper documents and ESI and to promote, to the fullest extent possible, the resolution of disputes regarding discovery without the Court's intervention;

1.  General Stipulations

    a.  The Parties have entered into this Stipulated Forms and Format for Document Productions ("Protocol") to facilitate the just, speedy, and inexpensive conduct of discovery involving paper documents and ESI through reasonable, precise, and cost-effective strategies regarding discovery without the Court's intervention.

    b.  Paper documents and ESI should be produced in accordance with the Federal Rules of Civil Procedure. The proportionality standard set forth in Fed. Civ. P. 26(b)(1) shall

be applied in all matters related to discovery of paper documents and ESI, including without limitation the preservation, collection, and production of such information.

c.     The procedures and protocols outlined herein govern the production of all paper documents and ESI, including all computer generated information or data of any kind, by the Parties.  This Protocol governs all Parties to these proceedings, whether they are currently involved or become so in the future.  All disclosures and productions made pursuant to this Protocol shall be subject to the Stipulated Protective Order entered in this matter.

2.    <u>Production Format Protocols</u>

a.     Except as provided in Section 4 or elsewhere in this Order, all production images will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files at 300 x 300 dpi resolution, unless a document  requires a higher resolution in order to be appropriately viewed.

b.     Paper documents or ESI containing color should be produced initially in color.  If a Party asserts that color production presents an undue burden, the Parties will meet and confer on a reasonable, cost effective means of providing the requested document(s) in color. The default for color images will be TIFF format or as single page JPEG format.

c.     A unique Bates number shall be assigned to each page, and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying  image. All Bates numbering will be sequential within a given document and use a consistent font and size throughout the production with no special characters or embedded spaces included in the Bates number.

d.     Any confidentiality or other endorsements shall be branded on the lower left-hand  corner of the page.   The Parties shall use reasonable measures to ensure that any  such branding does not obscure any part of the underlying image.  No additional branding or

designation made in reference to the document request to which a document may be responsive is required.

e. A searchable, document-level text file shall be provided for each paper document or ESI file produced as TIFF images.  Each such file will have a filename matching the Bates number applied to the first page of  the corresponding static image file or placeholder file, followed by the .TXT extension.  For ESI, the Parties agree that the searchable, document-level text file shall be created directly from the native file.  For ESI from which text cannot be extracted, for redacted documents, or for paper documents, the Parties agree that they will produce document-level OCR text for each such document.  To the extent practicable, the Parties will consider producing  searchable text in ANSI format.

f. **Load/Unitization File:**  The Parties agree that the producing Party will provide the following load files for all productions:

- **Metadata Import File**:  DAT format, in ASCII format (e.g., .txt, .dat, or .csv), using Concordance default delimiters to separate the fields and records.

- **Image Cross-Reference File**:  Standard Opticon delimited file in .OPT format, containing the corresponding image information and indicating page breaks.

g. Only one Metadata Import File and (if appropriate) one Image Cross-Reference File should  be included with each production.  The Metadata Import File should contain the metadata fields detailed and described in  Exhibit A and/or Exhibit B of this Protocol, as appropriate.  To the extent possible, the Parties agree to  populate the CUSTODIAN field for all produced ESI and paper documents, if known and reasonable.

h. **Production Media:**  The Parties agree that documents shall be produced preferably through a secure File Transfer Protocol ("FTP") provided via email or otherwise on physical media ("Physical Media") sent by a method no slower than overnight delivery via USPS, UPS, or FedEx.  Acceptable Physical Media includes external hard drives or

other electronic media agreed to by the Parties.  Each piece of Physical Media shall identify a production number corresponding to the production volume, as well as the volume of the material in that production.  Each piece of Physical Media shall also identify:  (1) the matter name and case number' (2) the producing Party's name; (3) the production date; (4) the Bates number range of the materials contained on the Physical Media; and (5) a short description of the categories of information within the production and the type of materials on the media.  In the event that a party utilizes an FTP for the production of documents, the information identified in this section to be provided with Physical Media shall be provided in a written production letter ("Transmittal Letter") with the accompanying email providing instructions for accessing documents through the FTP.

i.    **Language:**  A paper document or ESI that contains a natural language other than English, in whole or in part, shall be produced in the original language.  A producing Party is under no obligation to prepare, provide or search for English translations of non-English language documents.

3.    <u>Electronic Production of Paper Documents as Static Images</u>

The Parties agree that to the extent that the producing Party elects to produce hard copy documents in electronic format, such documents will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files as described above.  Additionally:

a.    In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be separated into multiple records (i.e., paper documents should be logically unitized).  The Parties will use reasonable efforts  to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

b.    The Parties agree that any file folders and/or documents affixed to hard copy

documents will be scanned as separate documents.

   c.     The Parties agree to provide the appropriate load/unitization files in accordance with attached Exhibit A and consistent with the specifications for such files set forth in Section 2, above.

   d.     The Parties agree that the producing Party also produce searchable optical character recognition ("OCR") text of scanned paper documents consistent with the specifications for Searchable Text set forth in Section 2, above.

4.    <u>Production of ESI in Native File Format</u>

The Parties agree that ESI shall be produced as TIFFs with accompanying load file except that certain documents will be produced in native format, specifically:

- Spreadsheet formatted document files (e.g., Microsoft Excel Files)
- Multimedia audio or visual files such as voice and video recordings (e.g., .wav and .mpeg)

The Parties may discuss additional production in native format on a document by document or category by category basis. Any documents produced in native format should be produced in accordance with the following specifications:

   a.     A unique document number shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file.

   b.     For each produced native file, the producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number and confidentiality designation for the corresponding native file. Any confidentiality designation will also be provided in the corresponding load file.

   c.     Prior to a trial or other proceeding at which the receiving Party may use a native document, the receiving Party agrees to advise the producing Party if the native document has been produced without a corresponding TIFF image file.

   d.     If a document that otherwise would be produced in native format requires redaction, such

documents may be produced in TIFF format in accordance with this Protocol.

    e.    For each document produced in native format, the producing Party will provide all metadata contained in the field identified in Exhibit B.

5.    <u>Production of ESI as Static Images</u>

Except for those documents produced in native format pursuant to Section 4, above, the Parties agree that ESI will be produced in TIFF format with accompanying load file as describe in Section 2, above. Additionally:

    a.    The Parties agree to meet and confer regarding file types that are not amenable to conversion into TIFF images and which may not be easily produced in native file format. If necessary, any such relevant and responsive, but non-convertible files, may be temporarily produced in the form of a placeholder TIFF image.

    b.    When processing ESI, the Parties agree to use Coordinated Universal Time (UTC) as the time zone.

    c.    When processing ESI for production as a static image, the Parties agree that "Auto Date" be forced off, and "hidden columns or rows", "hidden worksheets", "speaker notes", "track changes", "comments" and other similar information viewable in the native file be forced on such that the information is preserved to the extent practical and appears on the produced image file.

    d.    Parent-Child Relationships (i.e., the association between an attachment and its parent conveying document) that have been maintained in the ordinary course of business shall be preserved at processing and production, such that the attachments appear in order behind the conveying email. A non-responsive attachment within an otherwise produced family shall be represented in the production by a single page slipsheet indicating the attachment is non-responsive and appearing in order behind the conveying responsive email.

e.    The Parties are not obligated to manually populate any fields in Appendix B that cannot be extracted from the document using automated processes with the exception of Custodian, BegBates, and EndBates.

f.    Known software files identified in the National Software Reference Library database maintained by the National Institute of Standards and Technology ("NIST") need not be collected or produced.

g.    In order to reduce the burden of collecting and producing irrelevant and non-substantive material, the Parties are not obligated to collect or produce contact files.

h.    To the extent that the Parties request information from enterprise or relational databases or other structured data (e.g., Oracle, SQL Server, DB2), responsive information contained within a database will may be produced by querying the database and generating a flat file report or exportable electronic file (e.g., .CSV) of such data along with relevant fields for review by requesting Party.

i.    Embedded Objects in an ESI file are to be extracted at processing.  Some file types may contain embedded objects, typically found in the following productivity types:  MS Excel, MS Word, MS PowerPoint, MS Project, MS Outlook, MS Access, as well as Adobe Acrobat (PDF).  Objects within those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded if the file in which these objects are embedded is produced.

j.    Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as attachments in order behind the document in which they were referenced by link. Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source.

k.      Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure the compressed file within a compressed file is decompressed into the lowest possible compressing resulting in individual files.

l.      The producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production.

6.      <u>Format of Prior-Production Format of Documents</u>

Documents produced for litigation or other court proceeding outside of this proceeding may be produced to the Requesting Party in this proceeding in the production format from the prior production. The receiving Party may thereafter request a meet and confer regarding the form, content, or adequacy of any such production including this provision.

7.      <u>Redactions</u>

Parties agree that ESI and paper documents may need to be redacted.  To the extent that a responsive document contains, information that is protected from disclosure by applicable privilege or immunity, information that is governed by applicable privacy law or regulation, such as private or personally identifying information, or other information that the Protective Order entered allows to be redacted, the producing Party may produce that document in redacted form.  Each page of the document from which information is redacted shall bear a designation that it has been redacted, or when the document has been redacted in full, a single page slipsheet may be produced to provide designation indicating the reason it was withheld from an otherwise produced family.  Any confidentiality designation will also be provided in the corresponding load file.

To the extent that any document contains information that is redacted, those documents shall be produced in the form of a redacted .TIFF image.  Documents otherwise produced natively, such as Spreadsheets, may be redacted and produced in native format and the Parties will ensure that the original data in the redacted spreadsheets will be preserved.

8.      Search Methodology and Data Reduction

The Parties expect to employ one or more search methodologies in order to reduce discovery burdens, including possibly but without limitation the use of search terms, predictive coding, statistical-based sampling, and other advanced search and retrieval technologies to identify potentially relevant ESI, including email.  All meet and confer sessions regarding search methodologies will give appropriate consideration to applying the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1).

With the objective of limiting the scope of review and production, the Parties agree to meet and confer to try to develop a mutually agreeable list of custodians, data sources, and search terms for each Party and to identify the time period that may contain responsive documents.  Nonetheless, the use of search terms does not require production of non-responsive, irrelevant materials or content merely due to the presence of a search term or search terms, which will be applied to all in-scope data sources as a default.  All documents within the responsive time period for the agreed upon custodians and data sources that contain an agreed upon search term for that Party will be analyzed to determine responsiveness and produced as required per this Protocol.  Initial custodians, data sources, search terms and date range to be finalized on or before May 3, 2024.

Any search for potentially relevant documents and ESI shall involve searching for such documents in data sources within which such documents and ESI are likely to be most readily accessible.  If data sources are identified that are not readily accessible, the Parties shall meet and confer to discuss the necessity of searching such data sources.  Data sources that are not reasonably accessible because of undue burden shall not be required to be searched.

9.      Deduplication

The Parties shall make reasonable efforts to deduplicate ESI.  Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians.  ESI will be considered duplicative if it has matching MD5 or SHA-1 hash values.  Documents with the same content but different metadata can also be identified

through the use of near-duplication technology, provided that only documents identified by such technology are 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files, nor the parent document, will be deduplicated.

Attachments to emails shall not be eliminated from their parent emails by deduplication.  Where a responsive stand-alone document is an exact duplicate of an email attachment, the email attachment must be produced and the stand alone document may be deduplicated.

A list of all custodians who were in possession of the document,  including those whose copy of   the   document   was   removed   during   deduplication,   should   be   placed   in   the CUSTODIAN_DUPLICATE (or "DUPLICATE_CUSTODIAN") field,  with each entry separated by a semi-colon (;) character, as set forth in Exhibit B.

10.   Email Threading and Privileged Documents

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize threading or "email thread suppression."  As used in this Protocol, email thread suppression means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email messages and their attachments from each email thread.  An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread.  Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments not otherwise attached to a later in time email within that same thread, but any email will be treated as inclusive when it contains non-duplicative content.  Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced, however responsive, non-duplicative attachments will be produced along with their

conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread.

For all responsive documents withheld in their entirety for privilege, the producing Party will produce a Privilege Log explaining the documents withheld.  It will be produced within 60 days of the production from which the document(s) were withheld.  Parties have no obligation to produce or log information generated after the date of the commencement of this proceeding.

Duplicative emails suppressed under Section 10 need not be reflected on the Party's privilege log.  When there is a chain of privileged emails, the producing Party need only include one entry on the privilege log for the entire email chain, and need not log each email message contained in the chain separately.  In this circumstance, redacted documents from the chain need not be logged as long as (a) for emails, the bibliographic information is not redacted and (b) for non-email documents, the redaction is noted on the TIFF image.

This privilege log will include the date range, document type(s), individuals or email addresses provided as authors/senders and recipient(s), category description, privilege justification, and number of documents withheld for each category.  Documents that cannot be generated or included on the categorical log and require a document-by-document or communication-by-communication listing may be generated via a metadata log, consisting of an export of the document date, author/sender, recipient(s), and file type as well as privilege or protection being asserted.

11.   <u>Preservation of ESI</u>

Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

The Parties are not required to modify or suspend, on a going forward basis, the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.  The Parties have not taken, and are not required to take, any such backup media out of ordinary rotation.

Pursuant to this Protocol, the Parties have no obligation to preserve, collect or produce the following information or data sources if they are not kept in the ordinary course of business:

a.      "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

b.      Random access memory (RAM) or other ephemeral data;

c.      Online access data such as temporary internet files, history, cache, cookies, etc.;

d.      Data in metadata fields that are frequently updated automatically, such as the "Date Accessed" value in Microsoft Windows operating systems;

e.      Backup tapes or media which are not readily accessible because of undue burden or cost or other "Backup Systems" that periodically store electronic information to permit recovery of the information in the event of a system failure;

f.      Personal electronic data (e.g., email, calendars, contacts, notes, and text messages) stored on mobile devices that is not stored in the ordinary course of business (e.g., iPhone, iPad, Android, and BlackBerry devices) need not be collected unless it appears, based on witness interviews and/or testimony, that a particular custodian has relevant electronic data of this kind in their possession, custody and control; provided, however, that all custodians shall be reminded of their obligation(s) to preserve electronic data;

g.      Instant messages or other real-time, transitory text transmissions that are not retained in the ordinary course of business unless, in custodian interviews, an identified custodian states that he or she regularly transacted business related to this dispute by instant or test message;

h.      Voicemail messages that are not preserved in the ordinary course of business;

i.      Legacy data contained on computers or information storage systems or software that is no longer used or supported by a Party and no longer reasonably accessible;

j.      Known junk files from the NIST list or unimportant data files;

k.      Network, server, or software application logs;

l.      Structural files not material to individual document contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);

m.      System files and files not actively saved by user;

n.      Automated emails not generated by a human author, including but not limited to automated out of office replies;

o.      Custodial data outside of named Document Custodians collection in Section 8 as agreed upon and delineated in the meet and confer;

p.      Non-Party or third party data; and

q.      Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

12.     <u>Non-Waiver of Privilege or Protection</u>

Any Party's production of privileged or work-product protected documents, ESI, or other information shall not constitute a waiver of the privilege or protection with respect to (a) those documents; (b) any other communications or document relating to the subject matter of those documents; or (c) any other communications or documents relating to the individuals or entities who sent, received or are named in those documents in this case or any other federal or state proceeding.  These protections apply irrespective of the degree of care taken by the producing Party in (1) preventing disclosure, it being expressly recognized that the producing Party is not obligated to engage in any pre-production review of the documents to identify Privileged Materials; or (2) rectifying disclosure, it being further recognized that the producing Party shall have no obligation to engage in post-production review to determine whether it has produced any Privileged Materials. The Parties reserve the right to challenge any assertion by the producing Party of attorney-client privilege or work product protection with respect to any particular document or collection/compilation of documents or data.  Nothing in this Protocol shall require a Party

to produce documents that are protected from disclosure.  This paragraph shall be interpreted to provide the greatest protection allowed by law.

The Parties further agree that if a Party receiving information or documents independently determines that the producing Party produced information that reasonably appears to be subject to a claim of privilege or of protection as trial-preparation material, the receiving Party shall notify the producing Party or Parties of the apparent inadvertent disclosure, and (a) must promptly return, sequester, or destroy the specified information and any copies it has; (b) must not use or disclose the information until the claim is resolved; (c) must take reasonable steps to retrieve the information if the Party disclosed it before making the independent determination that the document was privileged; and (d) may promptly present the information to the Court under seal for a determination of the claim.  Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

13. <u>Data Security, Control, and Protection</u>

The Parties agree that a Party receiving documents, ESI or other information exchanged in this matter shall take precautions to secure the materials received and prevent unauthorized access, disclosure or dissemination.  Parties shall exercise at least the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of information exchanged in this matter as is exercised by the recipient with respect to its own information of the same or comparable confidentiality and sensitivity. Receiving Parties must take reasonable precautions to protect information designated as "Confidential" or "Attorneys' Eyes Only" pursuant to the Stipulated Protective Order (Protected Information) from loss, misuse and unauthorized access, disclosure, alteration, and destruction, including but not limited to:

a.   Protected Information shall be stored and maintained in a reasonably secure manner so as to avoid unauthorized disclosure, including reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such information against unauthorized access and other reasonably anticipated threats or

hazards, and that ensures that access is limited to the persons authorized under this Order and the Protective Order.

b.      Protected Information in electronic form shall be maintained in a secure litigation support site and/or other electronic sources that apply standard industry practices regarding data security, including but not limited to, application of access control rights to those persons entitled to access the information under this Order and the Protective Order;

c.      A list of current and former authorized users of the receiving Party's litigation support site shall be maintained while this litigation, including any appeals, is pending;

d.      Protected Information downloaded from the litigation support site in electronic format shall be stored only on devices (e.g., laptop, tablet, smartphone, USB drive) that are password protected and/or encrypted with access limited to persons entitled to access confidential material under this Order and the Protective Order.  If the user is unable to password protect and/or encrypt the device, then the Protected Information shall be password protected and/or encrypted at the file level;

e.      Protected Information in paper format is to be maintained in the receiving Party's counsel's law offices or comparably secure location, with access limited to persons entitled to access Protected Information under this Order and the Protective Order; and

f.      In the event a Party who received Protected Information experiences a data breach, the receiving Party shall immediately notify the producing Party of same, describe the incident and the Protected Information accessed without authorization and cooperate with the producing Party to address and remedy the breach, as well as to preclude further breaches and to address publicity regarding the breach.  The receiving Party shall take such actions as are required by applicable laws, including privacy laws.  After notification, the receiving Party shall keep the Designating Party informed of remediation efforts. Nothing herein shall preclude the producing Party from asserting legal claims or constitute

a waiver of legal rights and defenses in the event of litigation arising out of the receiving Party's failure to appropriately protect Protected Information from unauthorized disclosure.

14.   <u>Limitation</u>

Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

This Protocol does not address, limit, or determine the authenticity, admissibility, relevance, discoverability, or agreement to produce of any document or ESI.  The Parties are not waiving the right to seek any discovery and are not waiving any objections to any discovery requests.

All documents produced hereunder are fully protected and covered by the Parties' confidentiality agreements, by any clawback agreements entered into by the Parties, and by the Stipulated Protective Order and any other applicable orders entered by this Court in this matter.  If the producing Party is producing a Document subject to a claim that it is protected from disclosure under the Stipulated Protective Order to be executed by the Parties, the producing Party shall make the designation as described in the Stipulated Protective Order.

**IT IS SO STIPULATED AND AGREED, THROUGH COUNSEL OF RECORD.**

Dated:  April 25, 2024

_____
Yonaton Aronoff, Esq.
Alisha McCarthy, Esq.
Jaclyn D. Newman, Esq.
Harris St. Laurent & Wechsler LLP
40 Wall Street; 53rd Floor
New York, NY 10005
(212) 397-3370
yaronoff@hs-law.com
amccarthy@hs-law.com
jnewman@hs-law.com

*Counsel for Plaintiff and Counterclaim
Defendant Absolute Resolutions
Investments, LLC*

Dated:  April 25, 2024

/s/ Phoebe S. Winder
_____
Phoebe S. Winder (*admitted pro hac vice*)
Jeffrey S. Patterson (*admitted pro hac vice*)
K&L Gates LLP
One Congress Street, Suite 2900
Boston, MA 02114
T: (617) 261-3196
Email: phoebe.winder@klgates.com
Email: jeffrey.patterson@klgates.com

Thomas A. Warns
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030
T: (212) 536-3900
Email: tom.warns@klgates.com

*Counsel for Defendant and Counterclaim
Plaintiff Citibank, N.A.*

**EXHIBIT A**

**Fields for Production of Paper Documents Converted to Static Images**

Note: The chart below describes the fields to be produced with the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person from whose files the document is produced |
| BEGBATES | Beginning Bates Number (production number) |
| ENDBATES | End Bates Number (production number) |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page) |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) |
| PGCOUNT | Number of pages in the document |
| TEXTPATH | File path for OCR or Extracted Text files |

**EXHIBIT B**

**Fields for Production of ESI**

Note:  The chart below describes the fields to be produced with  the Load / Unitization Files in generic,

commonly used terms.  Field names may vary from the below.

| Field | Doc | Definition |
|---|---|---|
| CUSTODIAN | All | Name of person or non-custodial data source from whose files the document is  produced |
| DUPLICATE_CUSTODIAN or CUSTODIAN_DUPLICATE | All | Custodian, plus any additional Custodian(s) who  had a duplicate copy removed during global  deduplication (with each Custodian separated by a  semicolon (;) character) |
| BEGBATES | All | Beginning Bates Number (production number) |
| ENDBATES | All | End Bates Number (production number) |
| BEGATTACH | All | First Bates number of family range (i.e., Bates number of the first page) |
| ENDATTACH | All | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) |
| PGCOUNT | All | Number of pages in the document |
| FILETYPE/APPLICATION | All | Application used to create document |
| FILEEXT | All | File extension of the native file (e.g., XLS, DOC, PDF) |
| FILEPATH | eDocs | File source path for all electronically collected documents, which includes location, folder name |
| FILENAME | eDocs | File name of the original electronically collected documents |
| DOCTYPE | All | Descriptive field created by the vendor processing software (e.g. email, edoc, image, attachment) |
| HASHVALUE | All | MD5 Hash or SHA Value created during processing |

| FROM | eMail | Sender of email |
|---|---|---|
| TO | eMail | Recipient of email |
| CC | eMail | Additional Recipients of email |
| BCC | eMail | Blind Additional Recipients of email |
| SUBJECT | eMail | Subject line of email |
| DATESENT (mm/dd/yyyy hh:mm) | eMail | Date and Time Sent |
| DATERCVD (mm/dd/yyyy hh:mm) | eMail | Date and Time Received |
| DATECRTD (mm/dd/yyyy hh:mm) | eDoc | Creation Date and Time |
| LASTMODD (mm/dd/yyyy hh:mm) | eDoc | Last Modified Date and Time |
| TITLE | eDoc | Title field value extracted from the metadata of the native file. |
| AUTHOR | eDoc | Creator of a document |
| LASTAUTHOR | eDoc | Last Saved By field contained in the metadata of the native file |
| CONFIDENTIALITY | eDoc | Confidentiality designation for documents produced in native format |
| NATIVEFILELINK | All | For documents provided in native format |
| TEXTPATH | All | File path for OCR or Extracted Text files |
| MESSAGE ID | eMail | |
| CONVERSATION INDEX | eMail | |