# K&L GATES

September 6, 2024

Phoebe S Winder
Partner
phoebe.winder@klgates.com
T +1 617 261 3196
F +1 617 261 3175

**VIA ECF**

Hon. Margaret M. Garnett
United States District Court, Southern District of New York
40 Foley Square, Courtroom 906
New York, NY 10007

Re:   *Absolute Resolution Investments, LLC v. Citibank, N.A.*, 22 Civ. 2079 (MMG)

Dear Judge Garnett:

We represent Citibank, N.A. ("Citi") in the above-referenced matter and in response to Absolute Resolution Company's ("Absolute") letter-motion to compel dated August 26, 2024. Absolute has not met its burden to show the requested documents should be produced. The requested documents are: (1) subject to a valid release, (2) outside the scope of permissible discovery, and (3) protected by policies supporting employee privacy.

**I. Documents Relating to "FF2" are Not Discoverable Due to the Parties' Release**

Absolute's efforts to seek wide-ranging discovery relating to the parties' second forward-flow sale in March 2020 - May 2020 ("FF2") should be seen for what they are – backdoor attempts to relitigate its FF2 claims, notwithstanding the parties' enforceable release ("Release"). On May 28, 2020, at the height of the Covid-19 lockdown, the parties executed the Release, which was intended to address, among other things, a Covid-related suspension of account sales and collections, OCC-related guidelines calling for accounts in Covid-stricken jurisdictions to be withheld from sale, and questions raised by Absolute about whether certain March 2020 accounts had been adversely selected from the FF2 sales files. The Release, which included a significant price reduction in Absolute's favor, was aimed at resolving these disruptions and differences. Specifically, as to Absolute's claims of adverse account selection, Absolute released "all damages, costs, and liabilities relating to claims that (a) [Citi] violated Section 3.5 of the Addendum by using selection criteria adverse to [Absolute].…" *See* Motion at Ex. D (emphasis added).[1] Less than a week after the execution of the Release, Absolute's CFO wrote to a colleague, stating that Absolute was going to file a lawsuit against Citi.

Having made good on its intention to ignore the mutually-agreed-to Release, Absolute now claims it is entitled to wide-ranging discovery in order to show Citi's alleged FF2-related misconduct. Notably, Absolute's discovery is not limited in any way. Virtually every category of document that Absolute seeks as to the FF1 and FF3, Absolute also seeks as to the FF2, including

---

[1] This Court affirmed the Release's enforceability. *See generally* ECF 43 at III(A)(2). Further, by the Absolute CEO's own admission, the Release encompassed, at a minimum, all tranches of the FF2 sale (March, April, May 2020). Absolute cannot deny this fact, nor has attempted to do so in its letter motion.

alleged evidence that Citi did not "administer the control group process" in good faith and that Citi "cherry-picked" accounts. These allegations fly in the face of the Release of adverse selection claims. Absolute can try to vary its wording, but ultimately its requests directed to the control process and the selection, transfer, and "cherry-picking" of accounts are synonymous with the alleged adverse selection encompassed by the Release.

To the extent that Absolute suggests that it is entitled to explore the possibility that Citi might have committed some other bad act relative to the FF2 (outside of Citi's alleged adverse account selection), Absolute has not made such a claim, nor has it any basis to so do. The Court dismissed Absolute's original fraud and misrepresentation claims for a reason: Absolute had failed to state a claim. Absolute cannot now engage in a wide-ranging fishing expedition, requiring the review of thousands of documents, on the off chance it might come across evidence of FF2 misconduct that it has not alleged, and cannot allege. It is well-settled that "the purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."[2]

Absolute nonetheless argues that it needs FF2-related discovery to prove "its theory of damages" and its claim that Citi did not provide Absolute enough information about the accounts Citi allegedly had adversely selected. But in so arguing, Absolute seeks to render the Release meaningless. Absolute agreed to give up <u>all claims of damages and liability</u> relating to any alleged FF2 adverse selection. Absolute did not give up only some of its claims – it gave up <u>all</u> of its claims as to FF2 adverse selection, <u>no matter in what capacity those claims might ultimately arise</u>. For this reason, Absolute should not be permitted to engage in expansive FF2-related discovery in an attempt to fish around and find support for its FF1 and FF3 claims.

Absolute's claim that FF2-related discovery is needed to defend against Citi's counterclaim is baseless. Citi's counterclaim only concerns Absolute's termination of the FF3, and the contractual damages flowing therefrom. Motive is not an element of this counterclaim for breach of contract. Moreover, what occurred in the FF2 sale has no bearing on the FF3 sale. The FF2 (1) was an entirely different type of sale, (2) was of shorter duration, (3) had different account holdbacks due to Covid levels at the time, and (4) is the subject of a release for all claims of <u>damages, costs and liability</u> relating to adverse selection.

Lastly, contrary to Absolute's assertions, it would be incredibly burdensome to review documents relating to the FF2. It took Citi's reviewers 10 weeks to review approximately 29,000 documents relating to the FF1 and FF3 sales. By extrapolation, it would take a minimum of 3 weeks (estimated) to review approximately 6,000 FF2 documents, including privileged communications and analysis by counsel.[3] If Absolute's motion were allowed, Citi would face a costly and time-consuming review that would unnecessarily expand and delay discovery.

## II. Absolute's Request for Steven Dasch's Personnel File is Impermissible

Absolute seeks to compel the production of the personnel file of the former head of Citi's Asset Sales Department, Steven Dasch, claiming that Mr. Dasch had "supervisory authority over the decision whether to place accounts with outside bidders versus agencies and law firms." Am.

---

[2] *Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477, 480 (S.D.N.Y 1996) (denying plaintiff's request for discovery).
[3] Absolute also claims that Citi is producing "non-responsive" documents, and that therefore, rather curiously, it should not be a burden on Citi to produce the FF2 documents. Absolute neglects to mention that these "non-responsive" documents were generated as a result of its own overbroad ESI requests. Citi produced these ESI documents at Absolute's insistence. And, in any event, this ESI issue has no bearing on the dispute at hand.

Compl. ¶ 37. Absolute suggests that the personnel file may contain evidence that Mr. Dasch improperly directed accounts to his own advantage or that of Citi. Absolute further claims that Citi later terminated Mr. Dasch. *Id.* at ¶ 41.

This makes for a good story, but it is untrue. Mr. Dasch and Citi's Asset Sales Department did not have supervisory authority over the decision to sell accounts versus placement of accounts with agencies and law firms; Citi's Risk Department set these strategies. And Citi did not terminate Mr. Dasch; Mr. Dasch left Citi of his own volition. Absolute should not be permitted to gin up baseless allegations and use those allegations as a predicate to obtain a third-party's personnel file in the hopes of finding misconduct. This is not the law, especially where Mr. Dasch's private employment information has no bearing on whether Citi acted in breach.

Moreover, as a matter of Missouri law (which governs Mr. Dasch's employment rights), Mr. Dasch's personnel records are not discoverable. Missouri courts have long recognized a right of privacy in personnel records that is "'fundamental' and should not be lightly disregarded."[4] Under Missouri law, a "request for an entire personnel file … is overbroad."[5] Absolute's motion to compel the production of Mr. Dasch's employment file should be denied.[6]

### III. Absolute's Sales Plan Requests Are Not Relevant

By Requests 28 and 29, Absolute seeks "annual debt sales plans," "performance and revenue targets," "annual debt placement plans," "overall charge off recovery plans," and "all internal recovery targets and communications to law firms, agencies and servicers engaged for recovery." Absolute posits that these documents "are necessary to test Citi's motivation(s) to withhold higher-value accounts…" However, proof of Citi's "motive" is not an element of a claim for breach of contract or the covenant of good faith and fair dealing. Even if it was, that conclusory assertion is insufficient to make a *prima facie* showing that these expansive requests, appearing to cover *all* debt sales plans (regardless if they involved Absolute), *all* communications with Citi's debt sale vendors, or revenue targets across *all* of Citi's hundreds of annual sales to multiple debt buyers, are likely to lead to the discovery of admissible evidence.[7] The motion to compel responses to Requests 28 and 29 should therefore be denied.

Respectfully submitted,

*/s/ Phoebe S. Winder*

Phoebe S. Winder

---

[4] *Mitchell v. Mims*, No. 4:18-CV-00515-DGK, 2019 WL 573435, at *3 (W.D. Mo. Feb. 12, 2019) (citing *State ex rel. Delmar Gardens North Operating LLC v. Gaertner*, 239 S.W.3d 608, 611-612 (Mo. 2007)).

[5] *Mitchell*, 2019 WL 573435, at *3; *see also Johnson v. Neiman*, No. 4:09CV0689 JCH, 2010 WL 3258404, at *3 (E.D. Mo. Aug. 16, 2010); *Shirrell v. St. Francis Med. Ctr.*, No. 1:13-CV-42 SNLJ, 2013 WL 4517610, at *3 (E.D. Mo. Aug. 26, 2013) (denying request for employment records). New York courts apply a similar logic. In New York, the "production during pretrial discovery of personnel records of non-party employees—which records invariably contain sensitive medical, financial and other information of a highly personal nature—is not generally favored." *Palmer v. New York State Off. of Ct. Admin.*, No. 500-CV-0110(FJS/GHL), 2009 WL 1118271, at *1 (N.D.N.Y. Apr. 27, 2009); *Pothen v. Stony Brook U.*, No. CV136170JFBAYS, 2017 WL 1025856, at *4 (E.D.N.Y. Mar. 15, 2017).

[6] Absolute's confidentiality arguments completely miss the mark. The cases cited by Absolute do not concern personnel records, but rather the identity of an art dealer and a copyright infringement dispute. *See* Motion at 3.

[7] *See, Pothen*, 2017 WL 1025856, at *4 (plaintiff's speculation insufficient basis for court to compel discovery).