**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

ABSOLUTE RESOLUTIONS
INVESTMENTS, LLC,                                      Case No. 22-cv-2079-MMG

        Plaintiff,

        -against-

CITIBANK, N.A.,

        Defendant.

------------------------------------------------------------x

## CITIBANK N.A.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF PLAINTIFF'S PROPOSED EXPERT, MONTY MYERS,  PURSUANT TO RULE 702 AND *DAUBERT*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.      The Requirements of Fed. R. Evid. 702 Apply Equally to Trials by Jury and Bench........ 2

II.     Myers's Opinions are Based on Speculative, *Ipse Dixit* ...................................................... 3

        A.      Fed. R. Evid. 702 Does Not Permit Myers to Offer Speculative Opinions ............ 3

        B.      Fed R. Evid. 702 Does Not Permit Myers to Proffer *Ipse Dixit* Opinions ............. 4

        C.      Myers Must Explain Why Citi's Internal Controls Did Not Prevent Adverse
                Selection...................................................................................................................... 6

        D.      The Court Should Reject Absolute's "Missing Document" Claims as
                Impermissible Speculation........................................................................................ 8

III.    MYERS'S OPINIONS ARE BASED ON AN UNRELIABLE FACTUAL
        FOUNDATION ....................................................................................................... 10

CONCLUSION.................................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clarke v. Travco Ins. Co.*,
   No. 13-CV-5140 NSR, 2015 WL 4739978 (S.D.N.Y. Aug. 7, 2015) ......................................10

*Faulkner v. Natl. Geographic Soc.*,
   576 F. Supp. 2d 609 (S.D.N.Y. 2008)..................................................................................11

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997).............................................................................................................6

*In re M/V MSC FLAMINIA*,
   12-cv-8892 (KBF), 2017 WL 3208598 (S.D.N.Y. July 28, 2017) ...........................................2

*R.F.M.A.S., Inc. v. So*,
   748 F. Supp. 2d 244 (S.D.N.Y. 2010)................................................................................2, 3

*Restivo v. Hessemann*,
   846 F.3d 547 (2d Cir. 2017)..................................................................................................4

*In re Rezulin Prods. Liab. Litig.*,
   369 F. Supp. 2d 398 (S.D.N.Y. 2005)................................................................................7, 8

*State of New York v. United Parcel Serv., Inc.*,
   No. 15-cv-1136, 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) .............................................2

**Other Authorities**

Fed. R. Evid. 702 ......................................................................................................................5, 11

**INTRODUCTION**

After years of litigation, Citibank, N.A. ("Citi") is still no closer to understanding how Citi allegedly employed "selection criteria, materially adverse to the interest" of Absolute Resolutions Investments, LLC ("Absolute"), "in selecting the Accounts sold" to Absolute.[1,2]  While in its opposition Absolute claims that its expert, Mr. Monty Myers ("Myers"), has shown evidence of ████████████████████████,[3] Myers has not explained ███████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████ .

Myers needs to do more to satisfy *Daubert*'s factors.  The fact that Myers criticizes the Random ETL for its ████████████████████████████████████ ████████████████████ , is insufficient as a matter of law.  There is a material difference between an expert who acknowledges uncertainty while nonetheless grounding his opinion in the available evidence, and an expert who papers over the absence of sufficient evidence by labeling his conjecture "technical inference."  Myers falls into the latter category. His opinions do not

---

[1]    *See, e.g.,* Dkt. 174-2, Exhibit B at CITIBANK_00000400.

[2]    In its opposition, Absolute seems to make an eleventh-hour argument that Citi not only breached Section 3.5 of the MPSA, it also breached Section 3.3.1(i). *See*, *e.g.*, Dkt. 181, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Exclude the Expert Report and Testimony of Monty Myers ("Opp'n") at 2 (Myers's conclusions "directly address whether Citi's sale file creation process could █████████████████████████████████████ ....").  However, Absolute has made clear that its claim turns solely on adverse selection under Section 3.5. *See, e.g.,* Dkt. 18 at 2-3 ("Rather ARI's claim is premised upon the ***covenant*** in Section 3.5"); Dkt. 41 at 2; Dkt. 27 ¶ 110; Dkt. 127 at 1.  In fact, Absolute's corporate designee has effectively admitted that as much.  Declaration of Phoebe S. Winder ("Winder Reply Decl.") ¶ 3, Exhibit A, 30(b)(6) Deposition Transcript of Laura Jensen, Dated April 3, 2025 at 116:6-117:4 (conceding 3.3.1 was not breached); *see also* Dkt. 43 at 27 (MPSA's notice provisions apply to Section 3.3 claims).

[3]    Opp'n at 10-11, 15.

1

merely acknowledge uncertainty at the margins; rather, the core causal links in his analysis rest on inferences that are not supported by the record he reviewed.

Under Federal Rule of Evidence 702 ("Rule 702"), expert testimony cannot be predicated on speculative theories as to what might have occurred. Citi is entitled to know to which of Myers's multiple theories Citi must respond. Otherwise, if this case goes to trial, Citi would be placed in the prejudicial position of having to prove a negative, that is, to prove that adverse selection could not have occurred as vaguely described by Myers's many "possible" theories. Under the law of this Court, Citi does not bear this burden of proof. *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 269-70 (S.D.N.Y. 2010). It is incumbent on Myers and Absolute, not Lenzo and Citi, to demonstrate affirmatively and with reasonable certainty how adverse selection allegedly occurred and to explain how the factual record purportedly demonstrates the use of adverse selection criteria.

To be sure, Absolute argues that "Rule 702 does not require an expert to accept Citi's preferred narrative . . . ."[4] But Myers's fundamental misunderstanding of critical functions of the Random ETL process can hardly be described as a mere factual disagreement. Myers has wholly failed to understand how and when the Random ETL process operates. Myers's testimony and report should therefore be excluded as speculative, unreliable, and insufficiently linked to the factual record.

## ARGUMENT

### I.    The Requirements of Fed. R. Evid. 702 Apply Equally to Trials by Jury and Bench

As a preliminary matter, Absolute is incorrect in its contention that the Court should deny the instant motion because the case will be heard by the bench. A bench trial "does not diminish,

---

[4]    Opp'n at 2.

let alone eliminate, the requirements of Rule 702 of the Federal Rules of Evidence." *In re M/V MSC FLAMINIA*, 12-cv-8892 (KBF), 2017 WL 3208598, at * 3 (S.D.N.Y. July 28, 2017).  As this Court noted in *State of New York v. United Parcel Serv., Inc.*, No. 15-cv-1136, 2016 WL 4735368, at *1 (S.D.N.Y. Sept. 10, 2016), the fact that the trial is to the bench does not signal a "'free-for-all' vis-à-vis expert witnesses."  If the expert testimony amounts to pure speculation, it would have no probative value and would not assist the fact finder, be it the Court or the jury.  Here, Myers's testimony would invite just such an expert free-for-all because, as explained in more detail below, Myers seeks to offer ill-defined, speculative opinions that do not satisfy the requirements of Rule 702.

## II.   Myers's Opinions are Based on Speculative, *Ipse Dixit*

### A.   Fed. R. Evid. 702 Does Not Permit Myers to Offer Speculative Opinions

According to Myers, "███████████████████████████████████,"[5] and there is "direct" evidence ████████████████████.[6]  Myers never identifies or cites to this "direct" evidence, nor does he explain how he believes ████████████████████ ████████████████████.  Just because Myers says there is "direct" evidence of ████████ does not make it so.

This Court has made clear that this type of speculation is unreliable and impermissible as a matter of law:

> An expert's testimony that plaintiff's damages were caused by a series of acts by defendants is necessarily **an exercise in speculation when the acts that purportedly caused the damages are only hypothesized to have occurred. When the expert cannot even identify what defendants' damaging conduct consisted of, his testimony on causation is not merely suppositional—it is inherently unreliable**.

---

[5]   Opp'n at 15.

[6]   *Id.* at 8.

3

*R.F.M.A.S.*, 748 F. Supp. 2d at 270 (emphasis added).

The logic of *R.F.M.A.S.* applies equally here where Myers's claims of ███████ ████████ are "only hypothesized to have occurred." While Absolute argues that Myers's opinions can fall short of definitive proof, the law of the Second Circuit holds otherwise. In *Restivo v. Hessemann*, the Second Circuit ultimately determined that an expert's 99.5% level of certainty sufficed to satisfy Rule 702. 846 F.3d 547, 576-78 (2d Cir. 2017). Myers's opinions fail to come close to this level of certainty, as they are predicated on speculative theories about "potential" or "possible" vulnerabilities. Rule 702 does not permit such speculative offerings.

### B. Fed R. Evid. 702 Does Not Permit Myers to Proffer *Ipse Dixit* Opinions

Nothing in Absolute's opposition removes Myers's opinions from the realm of unreliable, *ipse dixit*. While Myers has come forward with a laundry list of the Random ETL's alleged vulnerabilities, none of them bears on whether and how Citi's selection criteria purportedly caused the Random ETL to cherry-pick choice accounts from the FF1 and FF3 sales. Rule 702 requires Myers to draw a causal nexus between the allegations of potential vulnerabilities and the allegations of adverse selection criteria, and he has failed to satisfy this requirement.

Nowhere is this more apparent than in Myers's opinions about the Random ETL's configuration tables. Citi produced the <u>exact</u> configuration tables that the Random ETL process used to effectuate the control splits for the FF1 and FF3 portfolios, but there remains a yawning gap between those control splits and the alleged adverse selection criteria that Myers says Citi employed. Configuration tables, which are comprised of computer code, are an industry standard for ETL, and their use does not amount to an objectionable, "partially manual" practice. It is undisputed that Citi uses configuration tables, subject to multiple internal controls, limitations, oversights, and approvals ("Internal Controls"), to systemically interface with Citi's systems to

accommodate authorized, business-driven changes.[7]  It is also undisputed that, to effectuate any such business-driven changes, and subject to these same Internal Controls, ███████████████

███████████████████████████████████████████

███████████████████████████████.[8]  But Myers has offered no evidence that any such ██████ occurred for the FF1 and FF3 portfolios,[9] and, without more, Myers's opinions rest on purely speculative, *ipse dixit*.

Myers's criticisms of the Random ETL's other alleged vulnerabilities share the same causal flaw.  By way of example:

Alleged Overly Complex Process:  Myers complains that the Random ETL process is overly complex, but the fact that the process may be complex or involve multiple steps is entirely irrelevant to whether Citi employed adverse selection criteria.

Alleged Business-Driven Process:  Citi admits that, per OCC guidance, it uses control groups as a random, objective, business-driven benchmark to assess whether Citi should retain portfolios or sell them to third parties.[10]  But Myers fails to draw a nexus between this "business-driven" process and Citi's alleged use of adverse selection criteria for FF1 and FF3.

---

[7]    Dkt. 173, Citibank, N.A.'s Memorandum of Law in Support of its Motion to Exclude the Expert Report and Testimony of Plaintiff's Proposed Expert, Monty Myers, Pursuant to Rule 702 and Daubert ("Mot."), at 7-8; *see also* Dkt. 174-18, Exhibit R, Rebuttal Expert Report of Justin Lenzo, Ph. D. ("Lenzo Report") ¶¶ 40, 65-68, 100.

[8]    Mot. at 7-8; *see also* Lenzo Report ¶¶ 40, 100.

[9]    Nor could he.  The record evidence demonstrates that Citi did not take any such actions during FF1 or FF3.  *See, e.g.,* Dkt. 174-21, Exhibit U (FF1 Control Group Sheet); Dkt. 174-22, Exhibit V (FF3 Control Group Sheet); Dkt. 174-32, Exhibit FF (FF1 SharePoint ticket); Dkt. 174-33, Exhibit GG (FF3 SharePoint ticket).

[10]   Mot. at 3 n.9, 7-8; *see also* OCC Bulletin 2014-37, *Consumer Debt Sales: Risk Management Guidance*, August 4, 2014, available at https://www.occ.treas.gov/news-issuances/bulletins/2014/bulletin-2014-37.html (last visited June 29, 2026) (Banks should "assess how debt sales align with the bank's business strategy and risk profile").

5

Alleged Competition for the Same Accounts:  Myers admitted at his deposition that he misinterpreted the ████████████████████████ that form the basis for his ████████████████.[11]   Absolute has no basis to reiterate Myers's discredited theory in its Opposition,[12] especially where it does not point to any other evidence supporting Myers's ████████ theory.  And in any event, Myers never explains how any such alleged ████████ could have adversely impacted FF1 and FF3.

Alleged Conflicting Counts for FF1:  Myers also vaguely claims that he "████████████████████████████ . . . .,"[13] but he does not identify the number of ████████████████ or why they allegedly caused adverse selection criteria.[14]

Clearly, Myers's objective is to throw out as many alleged vulnerabilities as possible in the hopes of preventing the exclusion of his opinions.  However, it is not enough that Myers generally points to the alleged potential vulnerabilities and then proclaims Citi employed adverse selection criteria.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

C.      **Myers Must Explain Why Citi's Internal Controls Did Not Prevent Adverse Selection**

The Second Circuit has unequivocally ruled that "any theory that fails to explain information that otherwise would tend to cast doubt on that theory is inherently suspect."  *In re*

---

[11]      Dkt. 174-20, Exhibit T at 173:10-174:5.

[12]      Opp'n at 21.

[13]      Id. at 18.

[14]      To the extent that Myers complains that he could not ████████████████ in FF1, Lenzo provided a detailed explanation on how those accounts were classified within Citi's systems.  Myers, nonetheless, chooses to ignore Lenzo's explanation.  Winder Reply Decl. ¶ 4, Exhibit B, Deposition Transcript of Justin Lenzo, dated December 19, 2025 at 190:3-192:23.

*Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005).  Here, no one at Citi involved in the file creation process █████████████████████████████████

████████████████████████████████████.[15]  The only way in which the Random ETL code

████████████████████████████████████████████████████████████████████

██████.[16]  Likewise, no one in the core Citi departments at issue can ██████████████

██████.[17]  Only Citi's Operations team can ████████████████████████████

███████████████████████████████████████████████.[18]

Myers's inability to squarely address the Internal Controls has resulted in opinions that are inherently suspect within the meaning of *Rezulin*.  Certainly, Myers would like to ignore the Internal Controls, or, at most, dismiss them.  In Absolute's view, it is sufficient that Myers has

"████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████."[19]

But, as Citi's fact and expert witnesses have explained, not only did Citi apply the Internal Controls to the Random ETL code, it also applied the Controls ████████████████

███████████████████████████.  Thus, as to items (1) through (3) above, Citi implemented Internal Controls that would have fully prevented any ██████████████████,

---

[15]    Mot. at 6, 8; *see also* Lenzo Report ¶¶ 40, 68.

[16]    *Id.* at 6; *see also* Lenzo Report ¶ 100.

[17]    *Id.* at 7-8; *see also* Lenzo Report ¶ 40.

[18]    *Id.* at 4, 6; *see also* Lenzo Report ¶ 47.  After the control group is selected, Citi identifies and removes any accounts that have had a recent change in sale eligibility status.  This is known as a manual removal process, which, per the above, is subject to internal controls, approvals, logging, and quality control.  Dkt. 166 ¶ 31.

[19]    Opp'n at 15 (internal citations removed).

including, but not limited to: ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████.[20] Myers's failure to

explain how these Controls were subverted demonstrates the unreliability of his opinions. *In re*

*Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d at 425.

### D.    The Court Should Reject Absolute's "Missing Document" Claims as Impermissible Speculation

Not only does Myers speculate about the code materials he did receive, he speculates about

the code materials he allegedly did not receive[21] and how those materials might possibly have

supported his theories if he had received them. Among other things, Myers identified "████



████████████████████████████████████████████ . . . ."[25]

What Absolute neglects to mention is that Myers testified at deposition that he had the

materials he needed to provide his opinions.[26]  And while Myers now argues that Citi's code-

---

[20]    Lenzo Report ¶¶ 100, 114-115, Appendix D ¶¶ 14, 17-18.

[21]    Items (4) through (6) (that is, allegedly missing documents) were subject to these same Internal Controls, and as Citi explains in Section D directly below, Absolute's "missing document" claims are without merit.

[22]    Opp'n at 4.

[23]    *Id.* at 8.

[24]    *Id.* at 11.

[25]    *Id.* at 15.

[26]    Winder Reply Decl. ¶ 5, Exhibit C, Deposition Transcript of Monty Myers at 107:4-10 ("I believe I had sufficient information to render the opinions that are expressed my report. Q. And do you believe that those opinions are fully supported by the data that you reference?  A. Yes.").

related production is insufficient, he also neglects to mention that the code-related materials were the subject of Absolute's motion to compel, which was fully resolved.[27]  Specifically, on April 25, 2025, the Court agreed that Absolute had not sufficiently outlined the code-related materials that it sought and ordered the parties to meet and confer, and for Absolute to then provide Citi with specifics as to what Absolute sought.[28]  Absolute included Myers in its meet-and-confer, and provided information on May 2,  5, and 12, 2025.  Citi went through an iterative search term and production process, and thereafter, Absolute did not return to the Court to complain that Citi's code-related production was incomplete or insufficient.

Instead, Myers personally attended the Rule 30(b)(6) deposition of Ms. Priya Kakkar (Citi's corporate code designee) held on May 16, 2025.  After Kakkar's deposition, Absolute did not request any additional code-related materials, and fact discovery closed on July 28, 2025. Moreover, five months later, on December 19, 2025, Myers participated by phone in the deposition of Citi's code expert, and Absolute subsequently requested that Citi produce certain information identified in its correspondence of January 9, 2026, which Citi provided on January 14, 2026. Expert discovery closed on January 2, 2026 without any additional requests for code-related materials on Absolute's part.

Now, almost a year after the close of fact discovery and six months after the close of expert discovery, Absolute and its expert cannot complain that Citi should be faulted because certain code-related materials are "missing."  Rather, their "missing document" claims should be seen for

---

[27]      Dkt. 106.

[28]      *See* Winder Reply Decl. ¶ 6, Exhibit D, Excerpt from conference held on April 25, 2025 at 51:14-16 ("The Court: I do think it would be helpful for counsel to have a further meet and confer with specifics about what your expert thinks is needed.").

what they are – yet another means by which Myers seeks to impermissibly speculate about the alleged vulnerabilities of the Random ETL process.

### III.    Myers's Opinions are Based on an Unreliable Factual Foundation

Absolutes attempts to gloss over Myers's misinterpretation of the uncontroverted factual record.  However, one thing remains clear and undisputed: the Random ETL processes ███████ ████████████████████████ (per Kakkar's testimony),[29] but it only did so on a ███████████ ████████████████████ (per Kottman's testimony and other supporting documents).[30]  Contrary to what Absolute would have the Court believe, this is not a matter of Citi changing its position.[31] Nor is this a matter of newly discovered evidence.  The evidence and testimony were always there, but Myers fundamentally misunderstood the ███████████████████████████████████ ███████.  This can hardly be characterized as "dissatisfaction and disagreement" with Myers's conclusions.  *Clarke v. Travco Ins. Co.*, No. 13-CV-5140 NSR, 2015 WL 4739978, at *6 (S.D.N.Y. Aug. 7, 2015) (excluding proposed expert testimony where the expert appeared "to have possibly based his conclusions on an erroneous assumption").

Perhaps in recognition of the key factual flaws in Myers's expert analysis, Absolute argues that "[Myers's] opinions are not based on that timing issue alone."[32]  However, in so arguing, it points to the same three re-hashed, speculative categories of allegations:  process complexity, the editable nature of the configuration tables, and missing documents, all of which Myers fails to connect to Citi's alleged use of adverse selection criteria.  *Faulkner v. Natl. Geographic Soc.*, 576

---

[29]    Dkt. 174-19, Exhibit S, 30(b)(6) Deposition Transcript of Priya Kakkar at 69:6-24.

[30]    Dkt. 174-11, Exhibit K, 30(b)(6) Deposition Transcript of Heather Kottman at 200:16-201:4; Lenzo Report ¶ 74.

[31]    Opp'n at 18 ("Citi now says that, for FF1 and FF3, the daily Random ETL job ███████ ████████████████████████████████") (emphasis added).

[32]    *Id.*

F. Supp. 2d 609, 619 (S.D.N.Y. 2008) (excluding proposed expert testimony, which "start[ed] with an unsubstantiated assumption" and "proceeds by nothing more than guesses").  Absolute's vague claims of "competing conclusions" cannot be used to defeat Myers's conjectural *ipse dixit*.  Fed. R. Evid. 702(d) requires that "the expert's opinion reflect[] <u>a reliable application of the principles and methods to the facts of the case</u>," Fed. R. Evid. 702(d) (emphasis added), and Myers has failed to satisfy this requirement.

## CONCLUSION

Because Myers's opinions are speculative, methodologically unreliable, and factually inaccurate, his testimony and related opinions should be excluded.

Dated: June 29, 2026                    K&L Gates LLP

By: */s/ Callie M. Ives*
     Thomas A. Warns
     Email: tom.warns@klgates.com
     Callie M. Ives
     Callie.ives@klgates.com
     599 Lexington Avenue
     New York, NY 10022-6030
     Tel: (212) 536-3900

     Phoebe S. Winder (*admitted pro hac vice*)
     Email: phoebe.winder@klgates.com
     Jeffrey S. Patterson (*admitted pro hac vice*)
     Email: jeffrey.patterson@klgates.com
     State Street Financial Center
     One Congress Street
     Boston, MA 02114
     Tel: (617) 261-3100

*Counsel for Defendant Citibank, N.A.*

## CERTIFICATE OF COMPLIANCE

The Memorandum of Law for Defendant Citibank, N.A. complies with the type-volume limitations set forth in Local Civil Rule 7.1(c). The relevant portions of Defendant's Memorandum of Law including footnotes, contain 3,313 words, as determined by Microsoft Word.

     */s/ Callie M. Ives*
     Callie M. Ives